**IN THE COURT OF APPEALS OF IOWA**

No. 20-1699
Filed April 14, 2021

**IN THE INTEREST OF R.S., H.G., and L.M.,**
**Minor Children,**

**S.G., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Lyon County, David C. Larson, District Associate Judge.

        A mother appeals the termination of her parental rights. **AFFIRMED.**

        Kevin J. Huyser, Orange City, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Debra S. De Jong, Orange City, attorney and guardian ad litem for minor children.

        Considered by Tabor, P.J., May, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

A mother appeals the termination of her parental rights to her three children, born in 2010, 2012, and 2014, pursuant to Iowa Code section 232.116(1)(f) (2020).[1] She challenges the sufficiency of the evidence supporting the ground for termination cited by the juvenile court, asserts termination is contrary to the children's best interests, requests application of the statutory exception to termination contained in section 232.116(3)(c), and claims the juvenile court erred in declining to grant her additional time to work toward reunification.

## I. Background

The family came to the attention of the Iowa Department of Human Services (DHS) in October 2018 upon allegations that the mother and children were living with a man, J.S., who the mother knew to be a registered sex offender but believed him to be innocent of the crime resulting in his status as a registrant, which involved inappropriate touching of his stepdaughter.[2] Shortly before the case opened, one of the children reported another of the mother's boyfriends had touched him inappropriately. The mother reported her plans to marry J.S. The mother agreed to a safety plan involving not allowing J.S. to be in the home or have unsupervised contact with the children. A few days later, service providers learned J.S. moved into an apartment adjacent to the mother's and the mother left the children with

---

[1] The children's fathers' rights were also terminated. Neither father appeals.

[2] J.S. was convicted of indecent contact with a child. He was sentenced in 2014. He received a deferred judgment, was placed on probation for two years, and was ordered to register as a sex offender. About a year later, his deferred judgment was revoked, and he was sentenced to an indeterminate term of imprisonment not to exceed two years, which was suspended, and placed on probation. He was found in contempt about another year later for failure to complete a sex-offender evaluation as ordered.

him and his thirteen-year-old son unsupervised. The State sought and obtained an order for temporary removal, dated October 16. Service providers observed a lack of nurturing tendencies during ensuing interactions between the mother and children, and it appeared the mother was relieved the children were no longer in her care. The mother initially desired a permanency option involving the children being placed in a guardianship with their maternal grandmother. That option never panned out.

In November, the mother stipulated to continued removal and adjudication of the children as in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) (2018). The mother continued her romantic relationship with J.S. and continued to lack insight concerning the safety risks flowing from allowing him to be around the children.

By the time of the June 2019 dispositional hearing, the mother reported no longer being in a relationship with J.S., but service providers doubted this given the mother's ongoing financial instability, J.S.'s history of providing the mother financial assistance, and the mother's ability to afford to pay her bills on her limited income. J.S. had also recently contacted providers and advised of his and the mother's plans to be together, with him serving as a father to the children. J.S.'s son also reported he and J.S. continued to spend significant amounts of time with the mother. In late August, the youngest child was placed in a separate foster home given the other children's fear of him resulting from aggressive behavior. In its December review and permanency order, the juvenile court granted the mother an additional six months to work toward reunification.

By April 2020, the mother continued to maintain her relationship with J.S. She had also reported her plan to move to South Dakota in May, which she knew would be a barrier to reunification. Due to the mother's lack of progress and unwillingness to end her relationship with J.S., DHS recommended the State initiate termination proceedings.

The mother moved to South Dakota in June. The same month, the State filed its termination petition, citing the mother's continued relationship with J.S. and lack of appreciation of the risk he poses to the children. At the September 2020 termination hearing, the mother testified she remained friends with J.S., but their intimate relationship ended in May 2019. When asked about photograph evidence depicting the mother and J.S. together at a professional football game in December 2019, the mother explained their mutual attendance was a coincidence. When asked about other evidence showing the mother and J.S. maintained an intimate relationship and had frequent phone contact as late as February 2020, the mother explained she had no further contact with J.S. after February. When pressed on cross-examination, the mother conceded J.S. came to her new home in South Dakota but said he was not invited. In response, evidence concerning text messages between the mother and J.S. from June 2020 was admitted. One string of messages included J.S. telling the mother he loved her and the mother asking, "How close are you?" J.S. responded, "I'm here," meaning at the mother's home in South Dakota. In another string, the mother questioned J.S. about deactivating her phone number and getting a new one so people would not know they are talking. J.S. also advised, "You are the greatest girlfriend and hopefully future wife." When asked further about the text messages at trial, the mother responded,

"I agree that it looks like me, but I do not agree that it was me." When asked whether the children could be returned to her care, the mother answered "in due time." While the mother was consistent in attending visitations throughout the proceedings, she never progressed beyond fully-supervised visits. The children are settled in and bonded to their respective foster families, who are willing to adopt.

Following trial, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2020). Given the mother's history of allowing unsafe men around the children and her ongoing relationship with J.S., the court concluded the children could not be returned to the mother's care without subjecting them to a risk of adjudicatory harm. The court found termination and adoption to be the best permanency option and in the children's best interests. The court declined to apply an exception to termination and did not address the mother's request for additional time. The mother appeals.

## II.      Standard of Review

Appellate review of orders terminating parental rights is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Analysis

### A.      Sufficiency of the Evidence

As to termination under section 232.116(1)(f), the mother only challenges the State's establishment of the final element—that the children could not be

returned to her care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4) (requiring clear and convincing evidence that the children cannot be returned to the custody of their parents at the present time); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

Upon our de novo review, we agree the children could not be returned to the mother's care at the time of the termination hearing.  While the mother meaningfully participated in services, obtained employment and housing, and complied with various expectations, we have other concerns.  The evidence presented renders the mother's claims she is no longer in a relationship with J.S., a registered sex offender, wholly non-credible.  And the mother's history of allowing inappropriate men around the children is troubling, especially so when she violated the safety plan in which she agreed to not allow J.S. unsupervised contact with the children.  We believe the children would not be safe if returned to the mother.  *See, e.g.*, *In re B.T.*, No. 20-0768, 2020 WL 4812662, at *1 (Iowa Ct. App. Aug. 19, 2020) (finding a child could not be returned to mother who lived with someone on the sex-offender registry); *In re A.M.*, No. 10-0527, 2010 WL 2383899, at *2 (Iowa Ct. App. June 16, 2010) (finding the mother's relationships with sex offenders created a risk of harm to the children and the children could not be safely returned to the mother's care).  Also, the mother never progressed beyond fully-supervised visits.  The children could not be returned to her care until she could demonstrate her ability to keep the children safe in an unsupervised setting.

To the extent the mother challenges the State's reasonable-efforts mandate on the basis that DHS did not pursue a home study after she moved to South

Dakota, progress her to semi-supervised visits after her move, or transport the children across state lines for visits, we reject the mother's challenge. The mother knew her move to South Dakota would be a barrier to services and, consequently, reunification. And the mother moved to South Dakota in June and did not place her request for these services until the day before the late September termination trial, which we conclude was too late to preserve error. *See, e.g.*, *In re P.L.*, No. 19-0103, 2019 WL 1294809, at *1 (Iowa Ct. App. Mar. 20, 2019) (noting "under the wire" attempt to place reasonable-efforts request before the court on the eve of trial is insufficient to preserve error).

B. Best Interests

We turn to the children's best interests. In determining whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). As noted, the defining elements of a child's best interests are safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The children have been out of the mother's care in the neighborhood of two years. She prioritized her relationship with J.S. over her relationship with her children knowing full well her relationship with a sex offender was the driving factor for the continued need for removal. "It is well-settled law that we cannot deprive child[ren] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child[ren]." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In*

*re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). We conclude the mother was given ample time to get her affairs in order and these children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). Furthermore, the children are integrated into their foster homes and are bonded to their foster families, who are willing to adopt, and we agree termination followed by adoption is in the children's best interests. *See* Iowa Code § 232.116(2)(b). While we agree with the mother siblings should be kept together whenever possible and acknowledge one of the children is in a different foster placement than the others, the overarching concern is the children's best interests. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). The singular child was placed in a separate foster home due to his aggressive behavior toward the others. Despite the potential disconnect between the siblings, we still find termination to be in the children's best interests.

C.     Statutory Exception

The mother requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c), which allows the court to forego terminating parental rights upon "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We certainly acknowledge a bond between the mother and children, especially the youngest one, but, upon our de novo review, we conclude she failed to meet her burden to show "that the termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child

relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish an exception to termination). While we agree termination will pose disadvantages, we are unable to conclude severance of the parent-child bonds will be detrimental to the children. Any disadvantage will be short-lived, given the children's roughly two-year removal from the mother's care and integration into their foster families.

D.    Extension

Finally, the mother requests an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that a child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

As noted, removal has lasted roughly two years. The mother was already given one six-month extension, during and after which she continued her relationship with a sex offender in spite of the barrier it posed to reunification. While the mother highlights the things she did do, which we acknowledge, she sweeps her inability to place her children over her relationship with J.S. under the rug. Given this, and the fact that the mother knew full well her relationship with J.S. was the main factor for the continued need for removal, we are unable to conclude "the need for removal . . . will no longer exist at the end of the additional

six-month period." Iowa Code § 232.104(2)(b). We deny the mother's request for an additional time.

**IV.     Conclusion**

We affirm the termination of the mother's parental rights.

**AFFIRMED.**